## J. S. RIPPEL & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59009.    Promulgated June 29, 1934.

*John A. Conlin, C.P.A.,* for petitioner.
*Paul A. Sebastian, Esq.,* for the respondent.

**1148**

OPINION.

TRAMMELL: The petitioner's contention is that the exchange by the petitioner and other stockholders of the Southern California Gas Co., and the Midway Gas Co., both California corporations, of a majority of the voting capital stock of those corporations for cash and bonds of the Southern California Gas Corporation, a Delaware corporation, organized for that purpose, was a merger or consolidation, or something in the nature thereof, and as such constituted a reorganization within the provisions of section 203 (h) (1) of the Revenue Act of 1926; that as a result of such reorganization the value of the bonds received in connection with the transaction was not subject to tax, in accordance with the provisions of section 203 (d) (1) of the same act.

It is respondent's contention that the acquisition by one corporation of a majority of the capital stock of another corporation under the circumstances here stated does not constitute a reorganization and hence both the cash and bonds which petitioner received for the stock it owned in the Gas Co. constitute taxable profit.

The pertinent provisions of the statute are as follows:

Section 203, Revenue Act of 1926:

SEC. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\*     \*     \*     \*     \*     \*     \*

(b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\*     \*     \*     \*     \*     \*     \*

(d) (1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

\*     \*     \*     \*     \*     \*     \*

(h) (1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation or substantially all the properties of another corporation), \* \* \*

There is no contention that the facts in this case constitute a reorganization unless they bring the transaction within the scope of subdivision (A) of section 203 (h) (1). That provision is quoted above. We have heretofore held that in order to come within the scope of this provision there must be a merger or a consolidation, or something analogous thereto. It is clear that there was no strict merger or consolidation. In the case of a merger one of the corporations loses its identity by merging into another which survives and absorbs the property and assets of the merged corporation. See *John J. Watts*, 28 B.T.A. 1056; *Pinellas Ice & Cold Storage Co.*, 287 U.S. 462.

In the case of a consolidation of two or more corporations the old corporations are dissolved and their assets are taken over by a new corporation. The question then is, Are the facts and circumstances in this case of such a nature as to constitute a transaction analogous to or in the nature of a merger or consolidation? We see no facts which bring it within such scope. The old corporation was not dissolved, but continued operation of its business

without change in corporate structure, capitalization, or otherwise, and is still in existence.

What occurred in this case was in fact merely a change in the ownership of a majority of the voting capital stock of the Gas Co. A partial or even complete change of stock ownership does not constitute a statutory reorganization. There was no transfer of assets, followed by a continuity of interest under a new or modified corporate structure; nor was there a merger or consolidation, or anything in the nature thereof, which effected such continuity of interest through an exchange of stock for stock.

As we said in *John J. Watts, supra*, at page 1063:

A consolidation of two corporations involves the dissolution of both and the transfer of their corporate assets and franchises to a new corporation. In a merger, on the other hand, one of two merged corporations loses its identity in the other. One corporation goes out of existence; the other corporation survives and the latter absorbs the property and franchises of the merged corporation whose stock it has acquired. * * *

The petitioners contend that there was a merger of the two corporations arising out of the provisions of the agreement between Sloane and the Vanadium Co. In our opinion the evidence does not lead to this conclusion. Under the provisions of the agreement the Vanadium Co. did acquire all of the capital stock of Ferro Alloys. This acquisition, however, created merely a change in the stock ownership of the latter company. The agreement contains no provisions looking to the creation of a " new or modified corporate structure." Therefore, although the former stockholders of Ferro Alloys secured for their stock in that company an interest in Vanadium Co., the transaction was not within the provisions of section 203 (b) (2) for the reason that their interest was not continued under a new or modified corporate form.

In *C. H. Mead Coal Co.*, 28 B.T.A. 599, we held that the transaction there involved constituted a reorganization. The reasoning which lead us to that conclusion, when applied to the facts of the instant proceeding, leads to a reversed result. In that case all the assets of the old company were purchased by the new company for cash at a foreclosure sale. The stockholders of the old company received stock in the new company. The facts found do not indicate whether the old company was formally dissolved, but certainly it was left without business or assets, only the old corporate shell remaining. In our opinion, we said:

It seems to us immaterial that there was a foreclosure sale of the old corporation's assets. Foreclosure sales are the common concomitant of reorganizations * * *. What is essential, however, to constitute a reorganization is continuity of interest from the old corporation into the new, and it is this element which distinguishes a reorganization from a mere sale by the old corporation of its assets for cash and notes to be distributed to its stockholders in liquidation.

In the case at bar there was no continuity of stockholders' interests from the old corporation into the new; there was no change

in the form of corporate ownership through which the interests of the old stockholders were continued in the same property. The new corporation merely purchased for cash and bonds approximately 60 percent of the voting stock of the old corporation, which latter company " continued its corporate existence and operations in exactly the same manner as prior thereto, unaffected and without modification in any way as a result of the change in the ownership of its common capital stock."

If the old corporation had exchanged all of its assets for stock of the new corporation, and if the old corporation had thereupon distributed the stock so received among its stockholders in liquidation, the transaction would have amounted to a reorganization, within the meaning of the statute. Cf. *Minnesota Tea Co.*, 28 B.T.A. 591, 596. But this was not done. A wholly different situation is presented, which in our opinion falls short of constituting a statutory reorganization.

It follows that the petitioner is taxable upon both the cash and the bonds in question.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

BLACK AND ARUNDELL dissent.